# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DAYTRON L. MOBLEY, SR., #346455,   *

Plaintiff   *

v   *   Civil Action No. CCB-18-3515

WARREN MALLOW,   *
APRIL CARR,
  *

Defendants

## **MEMORANDUM OPINION**

Daytron L. Mobley, Sr., a Maryland prisoner incarcerated at North Branch Correctional Institution ("NBCI"), has filed a Complaint alleging that on September 15, 2018, while held in a "strip cage," he was assaulted and "framed" by Defendant Warren Mallow, who stated he was going to plant a weapon on Mobley and say that Mobley tried to spit on him to justify the use of pepper spray. (ECF No. 1, p. 3).[1] Mobley alleges Defendant Carr was present during the entire incident and wrote a report to support Mallow's false story, and that he lost hearing in one ear due to Mallow's "excessive bursts of mace." (*Id.*). He seeks unspecified damages, transfer from NBCI, and termination of the Defendants' employment.[2] (*Id.*).

---

[1] This Memorandum Opinion cites to pagination assigned through the Court's electronic docketing system.

[2] Attached to the Complaint is an Affidavit from Clarence Sanders, who filed an Administrative Remedy Procedure grievance ("ARP") against Mallow on August 28, 2018, alleging Mallow had "false directives in order to punish [Sanders] with pepper spray" because "Mallow is corrupt," and has "threatened to plant weapons in [Sander's] cell because he dislikes African Americans." ECF No. 1-1, Aff. of Clarence Sanders. The affidavit includes Sanders's averment that Mallow told Sanders he would plant knives "on myself and inmate Mobley." *Id.*

In response, Defendants Mallow and Carr filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 15) which is unopposed.[3] No hearing is necessary to determine the outcome of this case. *See* Local Rule 105.6 (D. Md. 2018). For reasons stated below, Defendants' dispositive motion will be denied without prejudice.

## Statement of Facts

The parties present vastly different versions of material facts. Mobley states that while he was in the strip cage on September 15, 2018, Officer Mallow pepper sprayed him, then stated he would "plant a weapon on you and say you tried to spit on me." (ECF No. 1, p. 3). Mobley states that Sgt. Carr was present "the whole time" and "wrote a report to indulge" Mallow's version of events. (*Id.*; *see also* ECF No. 10, p. 1, ¶ 3). He alleges the "excessive bursts" of spray constituted a violation of his Eighth Amendment rights (ECF No. 1, p. 3) and that Carr denied him a shower to wash off the pepper spray residue. (ECF No. 10, p. 1, ¶ 5). He states that he was "frame[d]" on charges of possessing a weapon and attempting to assault (by spitting on) Mallow and Carr. (*Id.* ¶¶ 4, 6). He provides no information as to why Mallow and Carr would have conspired to "frame" him for possession of the weapon.[4]

Mobley further contends that Division of Correction Directives mandate that force should be used by staff only to defend against attack, to stop prisoner fights, or to control a mentally ill individual, and that in other circumstances, policy requires officers to call on organized Tactical Units to gain compliance. (ECF No. 10-1, p. 1). He provides several scenarios describing non-

---

[3] As required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on April 1, 2019, the Clerk notified Mobley that Defendants had filed a dispositive motion, that Mobley had a right to file a timely written response, and that if he failed to respond the case could be dismissed or a judgment entered against him without further notice. (ECF No. 16). To date, no responsive pleading has been received.

[4] The parties do not explain why Mobley was in the "strip cage" in the first place.

2

force-driven resolution in situations where there is no present danger to staff, and states that because he was locked in a cage, "hypothetically speaking" if he did "attempt to spit at . . . Mallow" the officer would not have been in danger. (*Id.* p. 2). These scenarios are offered to show that in his situation, the use of pepper spray was unwarranted and presumably retaliatory. (*Id.*).

In their dispositive motion, Defendants contend that their conduct was justified. They rely in part on Mallow's Notice of Inmate Rule violation ("NOIRV") report, which includes his sworn statement to prison officials written under penalty of perjury. In that statement, Mallow notes he was assigned to transfer Mobley, who had been housed alone, to another cell. Although the reason behind Mobley's transfer from his cell to the strip cage is not provided, it appears that while Mobley was in the cage, Mallow was taking inventory of Mobley's personal property, which had been taken to the property room. (ECF No. 15-2, pp. 4, 8, 10). During inventory, Mallow found a six-inch-long metal rod sharpened to a point with a cardboard handle tied with cloth, concealed in a rolled-up magazine. (*Id.*, pp. 8, 10, 20-22). The weapon was confiscated, logged into the property area with a chain of custody form, and photographed. Mallow then told Mobley he would receive a notice of rule violation for possessing a weapon. (*Id.*, pp. 8, 10).

Carr, the officer in charge, arrived and ordered Mobley to turn around to be handcuffed, and Mobley refused. (ECF No. 15-4; ECF No. 15-2, p. 10). Mallow asked whether Mobley would allow Mallow to cuff him, and Mobley appeared to comply, then called Mallow a "bitch" and a "pig" before spitting at him. (ECF No. 15-2, p. 10). The property cage mesh prevented spit from hitting Mallow, who then ordered Mobley to stop and turn around to be cuffed. Mobley cursed at Mallow, then placed his face in the slot opening and cleared his throat as if to spit again; Mallow jumped back and applied one burst of pepper spray at Mobley's face. (*Id.*).

3

Mobley refused to provide a written or verbal statement concerning the incident. (*Id.*, p. 13). Color photographs of Mobley's face and hands were taken for inclusion in the Use of Force report. (*Id.*, pp. 16-18). No video footage exists regarding what occurred in the strip cage, as the strip cage area has no surveillance camera, in accord with prison policy. (ECF 15-4, Decl. of April Carr, ¶¶ 4). It appears, however, that a ViconNet Video Surveillance recording was reviewed in connection with the incident. (ECF No. 15-2, p. 4, Administrative Data Checklist). Defendants do not explain why this recording has not been submitted to the court.

A "Use of Force" investigation conducted by NBCI staff found that the level of force used was appropriate against Mobley, a Maximum Security I disciplinary segregation prisoner, under the circumstances presented in Mallow's incident report. (*Id.*, Summary/Recommendations). Additionally, Mobley was charged with violating five prison rules: Rule 100 (engaging in a disruptive act), Rule 101 (assault or battery on staff), Rule 105 (possession, use, or manufacture of a weapon), Rule 117 (arranging, committing, performing or engaging in a sexual act, with regard to a statement to Nurse Holly Pierce, whom he saw after the incident) and Rule 316 (disobeying an order). (*Id.*, pp. 10–11). At a hearing held on September 18, 2018, Mobley pleaded guilty to Rule 316 and pleaded not guilty on the other charges. (*Id.*, pp. 24-25). He testified that after he refused an order to get dressed in the strip cage and refused several orders to "cuff up" he was cursed with a racial slur, maced, told he would be accused of spitting on Carr, and that a weapon would be planted on him. (*Id.*, p. 25). The Hearing Officer found Mobley not guilty of Rule 100 (engaging in a disruptive act) and guilty of the remaining four charges and sentenced to 180 days of segregation. (*Id.*, p. 26).

The medical progression of care provided after the incident is uncontroverted. Nurse Practitioner Holly Pierce's offer of a decontamination shower or medical treatment was met with

4

a vulgarity. (*Id.*, p. 14; ECF No. 15-3, Decl. of Jamie Judy, Medical Records Custodian, and medical record of September 15, 2018, pp. 2–3). Medical staff did not observe Mobley to be in distress and noted that he had refused medical treatment. (ECF No. 15-3, p. 2). It appears a medical examination was refused again on September 18, 2018, although the release of responsibility form was not signed by Mobley or Pierce. (*Id.*, p. 4). Five days later, on September 20, 2018, Mobley submitted a sick call slip complaining of hearing loss and severe pain in the right ear. (*Id.*, p. 5). On September 23, 2018, medical staff assessed him for hearing loss and scheduled him to return to the clinic in six days for an ear irrigation. (*Id.*, pp. 6-7). On September 28, 2018, Mobley's ears were flushed and large amounts of tissue paper were removed. (*Id.*, p. 8). The medical record suggests that the ear problem was caused by tissue paper jammed into Mobley's ear canals; Mobley has not sought ongoing treatment for hearing loss or other issues with his ears, and nothing suggests pepper spray exposure caused or exacerbated Mobley's ear problems.

## Standard of Review

In addressing the pending motion, the court considers documents beyond those intrinsic to Mobley's Complaint. Consequently, Defendants' Motion is treated as one for summary judgment. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must

'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the non-movant and draw all inferences in his favor without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526.

Defendants have attached to their motion records declarations, a personal declaration from Defendant Carr, and verified correctional records. Examination of the facts of this case, however, is hindered by several omissions in Defendants' pleadings. First, Defendant Mallow provides no independent affidavit or declaration beyond the departmental report he provided to prison officials immediately after the incident. Further, Defendants have not provided the ViconNet Video referenced in the Administrative Data Checklist (ECF No. 15-2, p. 4).

As a general rule when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Kipps v. Ewell*, 538 F.2d 564, 566 (4th Cir. 1976). A verified complaint, however, is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge. *Davis v. Zahradnick*, 600 F.2d 458, 459–60 (4th Cir. 1979). Mobley, who is an experienced litigator in this court,[5] likewise has failed to provide necessary information. Mobley's initial Complaint is unverified; however, on February 7, 2019, Mobley filed several

---

[5] *See Mobley v. Mychak*, Civil Action No. CCB-12-2493 (D. Md. 2012); *Mobley v. Michael, et al.*, Civil Action No. CCB-18-2856 (D. Md. 2018); *Mobley v. Drybola, et al.*, Civil Action No. CCB-19-3099 (D. Md. 2019).

exhibits and attached a "Declaration" attesting "under penalty of perjury" that "the statements enclosed in the claims are true and correct;" that he "had excessive use of force exercised on me by Officer Warren Mallow" that was "condone[d]" by Carr, who denied him a decontamination shower; that camera footage and photographs taken after the incident confirm his version of events; that he never had a weapon or spit on an officer during his twelve years of prison confinement; and that the time frames noted by Mallow are incorrect. (ECF No. 10).

Title 28 U.S.C. § 1746 provides, in pertinent part, that an affidavit must be signed by the maker, as true under the penalty of perjury, and dated, in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". This Declaration substantially complies with the statute and arguably constitutes an amendment to the Complaint, which would be treated as verified. Here, the verified Amended Complaint, which describes the alleged constitutional violations, is based largely on Mobley's own personal knowledge and Mobley swears them under the penalties of perjury. Accordingly, the court will construe the verified complaint as an affidavit for purposes of determining whether it generates a genuine dispute of material fact for the claims asserted.

## Analysis

Defendants seek summary judgment in their favor based on their declarations and exhibits, asserting excessive use of force was not used in the incident and Mobley was not "framed." They also raise the affirmative defenses of qualified immunity, arguing that their conduct did not violate any clearly established constitutional right of which a reasonable public official should have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Iko v. Shreve*, 535 F.3d 225, 237–8 (4th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Qualified immunity is an "'immunity from suit rather than a mere defense to liability'...." *Ussery v.*

7

*Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)), and shields government officials who commit constitutional violations but who, "in light of clearly established law, could reasonably believe that their actions were lawful." *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 401 (4th Cir. 2015) (internal quotations omitted); *see also Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016). Thus, "a government official who is sued in his individual capacity may invoke qualified immunity." *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013); *see Harlow*, 457 U.S. at 818.[6]

Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow*, 457 U.S. at 818, and so an officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. It protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). In other words, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). However, "[b]ecause an official 'who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity,' the

---

[6] The defense of qualified immunity does not apply to claims for injunctive or declaratory relief. *See Pearson v. Callahan*, 555 U.S. 223, 242–43 (2009) (affirming that defendants may not seek qualified immunity "in cases in which that defense is not available, such as ... § 1983 cases against individuals where injunctive relief is sought instead of or in addition to damages"); *Lefemine v. Wideman*, 672 F.3d 292, 303–04 (4th Cir. 2012) ("Claims for declaratory and injunctive relief are not affected by qualified immunity."), *rev'd on other grounds*, 568 U.S. 1 (2012); *accord Vollette v. Watson*, 937 F. Supp. 2d 706, 720 (E. D. Va. 2013). The court notes that Mobley seeks both damages and injunctive relief in his initial Complaint.

defendant bears the initial burden 'of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties.'" *Purnell*, 501 F.3d at 377 n.2 (citations omitted); *see also, e.g., Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004).

In *Scinto*, the court explained: "In determining whether defendant government officials are protected by qualified immunity, the court considers both 'whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established' at the time of the conduct in question." *Scinto*, 841 F.3d at 235 (citations omitted). Thus, the qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right," *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (overruled in part by *Pearson v. Callahan*, 555 U.S. 223 (2009)); and (2) whether the right at issue "was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012) (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)). The "two inquiries . . . may be assessed in either sequence." *Merchant*, 677 F.3d at 661–62; *accord Pearson*, 555 U.S. at 236 (judges may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first).

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citing *Creighton*, 483 U.S. at 639). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal

9

developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id.* at 818–19. To determine whether the right was clearly established, the court first must define the right at issue. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quoting *Creighton*, 483 U.S. at 640). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* at 16–17 (quoting *al-Kidd*, 563 U.S. 731, 741 (2011)).

The contours of a prisoner's constitutional right under the Eighth Amendment to be free from excessive force at the hands of corrections staff have long been established. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986) The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (per curiam). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.*

Defendants' generic assertion that they are entitled to qualified immunity is unavailing. The use of excessive force to maliciously and sadistically cause harm to prisoners has long been prohibited. *See Hudson*, 503 U.S. at 6–7. Obviously, Defendants dispute the facts underpinning Mobley's claim of unprovoked assault, and they argue that he initiated the attack by spitting on Mallow, prompting their use of reasonable force to gain control over him. However, as noted, the qualified immunity analysis considers the facts in the light most favorable to the plaintiff.[7] *Saucier*, 533 U.S. at 201. Defendants are not entitled to qualified immunity based on the allegations presented here.

Mobley's Complaint allegations sufficiently state a cognizable claim for excessive use of force under the Eighth Amendment. Proof of such a claim is complex and involves both an objective and a subjective component. The objective component asks whether the force applied was sufficiently serious to establish a cause of action. To meet this standard a prisoner must show that Defendants used something more than "*de minimis*" force. *Hudson*, 503 U.S. at 9–10; *see also Wilkins*, 559 U.S. at 39 ("nontrivial" force is a sufficient ground for Eighth Amendment excessive force claim).

Use of a chemical agent against an inmate confined in a "strip cage" is a nontrivial use of force and satisfies the objective component. The second component of Mobley's excessive force claim is more nuanced, and requires consideration as to whether Mallow "acted with a sufficiently culpable state of mind," *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996), and whether Mallow and Carr were wanton "in the infliction of pain," *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 322). This determination rests on whether force was used "in a good faith effort to

---

[7] Defendants do not address Mobley's contention that he was "framed" on charges of possessing a weapon, and qualified immunity in connection with this allegation is not under consideration here.

11

maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21; *accord Brooks v. Johnson, et al.*, 924 F.3d 104, 112–13 (4th Cir. 2019). As reiterated in *Brooks*, the question is not whether a reasonable officer could have used force to maintain discipline, but instead involves examination as to the reason force was used by that officer. *Brooks*, 924 F.3d at 113; *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008);[8] *see also Graham v. Connor*, 490 U.S. 386, 397–98 (1989) (emphasizing focus on "subjective motivations of the individual officers" under the Eighth Amendment).

Here, Mallow offers no declaration or affidavit addressing Mobley's allegation that Mallow "planted' the weapon or explaining, beyond the notice of infraction report written under penalty of perjury, his motivation in resorting to the use of pepper spray. Correctional officers may act in a "good faith effort to maintain or restore discipline" not only when confronting risks to safety but also when attempting to "preserve internal order" by compelling compliance with prison rules and procedures. *See Hudson*, 503 U.S. at 6; *Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984) (rejecting rule that use of mace against recalcitrant inmate may be justified only by threat to physical safety). Officers have "wide-ranging deference" in their determinations that force is required to induce compliance with policies important to institutional security. *Hudson*, 503 U.S. at 6. However, they may "cross the line into an impermissible motive – using force 'maliciously' and for the 'very purpose of causing harm,'– when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." *Brooks*,

---

[8] *Orem* involved pre-trial detainees rather than prison inmates, with excessive force claims governed by the Fourteenth Amendment rather than the Eighth. The Fourth Circuit applied the same *Whitley* standard – including its subjective component – in *Orem*. The Supreme Court has since extended the Fourteenth Amendment's objective reasonableness standard to excessive force claims by pre-trial detainees. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

12

924 F.3d at 113 (quoting *Whitley*, 475 U.S. at 320–21).

As in *Brooks*, the critical Eighth Amendment question here becomes one of motive: whether firing a burst of pepper spray was undertaken "in a good faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing harm," *Whitley*, 475 U.S at 320–21. Mobley argues that institutional policy requires a cooling off period in situations such as this before escalation to force can be undertaken. Mobley states that "hypothetically" even if he did attempt to spit on Defendants, the use of pepper spray to deter such misconduct is not permitted under Division of Correction policy and procedure. In the prison context, "the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process." *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015) (citing *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987)), *aff'd*, 644 F. App'x 243 (4th Cir. 2016); *see also Riccio v. County of Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) (noting "a state does not necessarily violate the Constitution every time it violates one of its rules"). Further, "[r]egardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met." *Kitchen*, 116 F.Supp.3d at 629 n.6 (citing *Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).

Defendants' motives cannot be discerned from the pleadings, but if any Defendant acted with a culpable state of mind, they reasonably should have known that they were violating well-established law. *See, e.g., Thompson v. Virginia*, 878 F.3d 89, 102 (4th Cir. 2017) (officer had "fair warning that gratuitously giving an inmate a 'rough ride' for no reason other than to retaliate against him for filing lawsuits and grievances is unconstitutional"). At the time of the incident, it was clearly established that a corrections officer's use of force in bad faith – not to preserve order

or induce compliance, but to punish through the "wanton infliction of pain" – violates a prisoner's Eighth Amendment right. *See, e.g., Williams*, 77 F.3d at 765 (citing *Whitley*, 475 U.S. at 322).

The court may not make credibility determinations, *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991), although "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Nonetheless, Defendants do not provide the ViconNet video, which may refute Mobley's claim that he was "framed;" Defendant Mallow does not provide an affidavit or declaration addressing all of Mobley's Complaint allegations; and Defendants do not otherwise address fully the allegations presented. Thus, the record does not provide a sufficient basis to grant summary judgment in favor of Defendants. Their dispositive motion shall be dismissed without prejudice, subject to renewal providing the court with the ViconNet video and other exhibits relevant to their defense.[10]

## Conclusion

For these reasons, Defendants' motion for summary judgment is denied without prejudice. A separate order follows.

11/21/19
Date

Catherine C. Blake
United States District Judge

---

[10] Defendants shall submit information indicating that Mobley was provided an opportunity to view the video.

14