IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAYTRON L. MOBLEY, SR., <br><br> Plaintiff, <br><br> v. <br><br> WARREN MALLOW, <br> APRIL CARR, <br><br> Defendants. | Civil Action No.: CCB-18-3515 |

**MEMORANDUM**

Following this court's memorandum and order denying without prejudice their motion to dismiss or for summary judgment, the defendants filed a second motion to dismiss or for summary judgment. (ECF No. 32.) Plaintiff Daytron L. Mobley, Sr., who is currently confined at North Branch Correctional Institution ("NBCI"), filed an opposition in response, incorrectly docketed as correspondence. (ECF No. 33). Also pending is Mobley's motion for an order compelling discovery. (ECF No. 34). No hearing is necessary to determine the matters pending before the court. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, both motions will be denied at this time.

**Background**

**A.    Prior Findings**

This civil rights complaint concerns Mobley's allegation that on September 15, 2018, Officer Warren Mallow used excessive force against him when he deployed a chemical agent, "pepper spray," into a "strip cage" where Mobley was being temporarily held while his property was inventoried. Mobley also claims Mallow planted a weapon in Mobley's property and charged him with a rule violation for possessing the weapon. Mobley's claim against Sergeant

April Carr is that despite being present when Mallow used excessive force and wrote a fraudulent notice of an inmate rule violation, she did not intervene and instead wrote a report to support Mallow's false narrative, and that she denied Mobley a decontamination shower. In his complaint, Mobley alleged that he had lost hearing in one ear due to the excessive amount of chemical agent sprayed on him by Mallow. (ECF No. 1 at 3).

In the court's November 21, 2019, memorandum, it found that the defendants were not entitled to qualified immunity based on Mobley's allegations of excessive use of force and the record before the court. The court further noted that the defendants had not provided a ViconNet Video Surveillance recording that had been reviewed in connection with the incident, Mallow did not provide a declaration, and the defendants did not fully address Mobley's allegations. (ECF No. 23 at 14). The court dismissed the motion without prejudice, "subject to renewal providing the court with the ViconNet video and other exhibits relevant to their defense." (*Id.*).[1]

As to Mobley's claim that his hearing was adversely affected by the use of a chemical agent against him, this was refuted by the verified medical records submitted by the defendants. Mobley refused the initial offer of medical care. (ECF No. 15-2 at 14; ECF No. 15-3 at 2–3).

---

[1] As stated in the court's November 21, 2019, memorandum:

> A "Use of Force" investigation conducted by NBCI staff found that the level of force used was appropriate against Mobley, a Maximum Security I disciplinary segregation prisoner, under the circumstances presented in Mallow's incident report. ([ECF 15-2 at 4, Administrative Data Checklist], Summary/Recommendations). Additionally, Mobley was charged with violating five prison rules: Rule 100 (engaging in a disruptive act), Rule 101 (assault or battery on staff), Rule 105 (possession, use, or manufacture of a weapon), Rule 117 (arranging, committing, performing or engaging in a sexual act, with regard to a statement to Nurse Holly Pierce, whom he saw after the incident) and Rule 316 (disobeying an order). (*Id.*, pp. 10-11). At a hearing held on September 18, 2018, Mobley pleaded guilty to Rule 316 and pleaded not guilty on the other charges. (*Id.*, pp. 24-25). He testified that after he refused an order to get dressed in the strip cage and refused several orders to "cuff up" he was cursed with a racial slur, maced, told he would be accused of spitting on Carr, and that a weapon would be planted on him. (*Id.*, p. 25). The Hearing Officer found Mobley not guilty of Rule 100 (engaging in a disruptive act) and guilty of the remaining four charges and sentenced [him] to 180 days of segregation. (*Id.*, p. 26).

(ECF No. 23 at 4 (footnote omitted)).

When Mobley submitted a sick call slip five days after the alleged assault by Mallow, he complained of hearing loss and severe pain in his right ear. (ECF No. 15-3 at 5). On September 23, 2018, Mobley was assessed by medical staff and was scheduled to return to the clinic in six days for ear irrigation. (*Id*. at 6–7). When Mobley's ears were irrigated on September 28, 2018, large amounts of tissue paper were removed. (*Id*. at 8). Accordingly, this court found that "nothing suggests pepper spray exposure caused or exacerbated Mobley's ear problems." (ECF No. 23 at 5).

**B.     Mobley's Supplemental Complaint**

Mobley filed a verified supplement to his complaint on December 31, 2019. (ECF No. 29). He states that on September 15, 2018, prior to a transfer to C-Wing, he was placed in a strip cage because Officer Mallow wanted to inventory his property. (*Id.* at 1). After the inventory was complete, Mallow and Carr, who was also present, told Mobley several times to turn around to be cuffed, to which he refused. (*Id.*). Mallow then pepper sprayed him six to seven times on his face and buttocks. (*Id.*). He told Mobley that he would plant a knife on him and say he tried to spit on Carr. (*Id.*). He states that he was denied a decontamination shower by Carr. (*Id.*). He says he suffered "serious pain to the eyes, vision loss, overwhelming skin burning for at least 35 [hours], loss of hearing and emotional distress." (*Id.* at 2).

**C.     Defendants' Current Motion**

The defendants have submitted a renewed motion that includes both the video and Mallow's declaration. (ECF No. 32).

        1.      Mallow's Declaration

Officer Mallow explains that on September 15, 2018, he was assigned to Housing Unit 1 as an escort officer. (ECF No. 32-1 at 1, ¶3). One of his duties for that shift was to conduct a

"routine inventory" of Mobley's property as he was scheduled for a "cell re-assignment" that day. (*Id.*) Mallow notes that officers are also given the "discretion to conduct random strip searches of inmates at any time." (*Id.*) Mobley was strip-searched on September 15, 2018. (*Id.*)

According to Officer Mallow, "[w]hen an inmate is moved to another cell, an inventory search of their personal property is conducted for contraband and to verify whether the inmate['s] property is in compliance with the allowable items set forth in the inmate Property Matrix." (ECF No. 32-1 at 1, ¶3). In order to perform the inventory search, Mobley's property was moved out of his cell and into the housing unit property room where Mallow inventoried his property. (*Id.*) While this was being done, Mobley was placed in "the adjoining property room strip search cage." (*Id.* at 2, ¶3). The strip search cage was utilized for Mobley's strip search. (*Id.*) There is no video surveillance camera in this area in accordance with institutional policy. (ECF 15-4 at 2, Decl. of Carr, ¶4).

Mallow states that he did not assault Mobley "with excessive pepper spray" as alleged. (ECF No. 32-1 at 3, ¶5). He explains that "[i]nmate spit is considered a potential health hazard, and an inmate who spits on an officer commits assault." (*Id.*) Mobley "attempted to spit towards" Mallow "through the strip search wire mesh." (*Id.*) Mallow "applied a short burst of pepper spray to [Mobley's] facial area" after Mobley disobeyed Mallow's direct order to "stop and turn around to be handcuffed and attempted to spit a second time through the strip cage cell door slot" towards Mallow and Carr. (*Id.*) After the pepper spray was deployed once, Mallow states that Mobley "complied with my order to stop and no further pepper spray or other use of force was necessary or applied." (*Id.*) Mallow denies uttering a racial epithet against Mobley or harboring any particular ill feelings towards him. (*Id.*) Mallow states that he never had any

issues with Mobley before and if he ever had a prior interaction with Mobley, "it was [an] incidental interaction within the routine course of [his] duties." (*Id*.)

Mallow also denies planting a weapon in Mobley's property during the inventory search he conducted. (ECF No. 32-1 at 3, ¶6). He explains that Mobley was present during the search as the strip search cage is in the property room, but Mallow cannot recall if Mobley was watching him search his property. (*Id*.). Mallow does, however, recall that he and Mobley were within sight of each other the entire time Mobley's property was inventoried and Mallow had an "incidental conversation" with Mobley while he conducted the search. (*Id*. at 4, ¶6). The weapon Mallow found was concealed inside a rolled-up magazine. (*Id*.) It was after Mallow informed Mobley that he would be receiving an infraction for the weapon that Mobley became agitated. (*Id*. at ¶7). Because Mobley was being charged with a violation of inmate rules, Mallow had to handcuff Mobley so he could be escorted out of the area and assigned to a cell designated for Administrative Segregation Pending Adjustment. (*Id.* at ¶7).

    2.    ViconNet Video

The video footage submitted by defendants captures a hallway where correctional staff are seen entering and leaving. (ECF No. 32-2 (filed separately)). There is no sound on the video and nothing of any relevance can be discerned from what it captures. Mallow provides the following accurate narrative description of what the video depicts.

> Video surveillance footage 18-NB-143 is 20 minutes of archived footage from September 15, 2018 at approximately 11:55 AM, of surveillance camera NBCI-DVR-HU1-01-N188-HU1-Staff Corridor (Rear), which is a surveillance camera of a Housing Unit 1 hallway, near the housing unit property room. I appear in the video footage at 11:56:15, pushing a laundry-bin type of cart, which contains Plaintiff's personal property. I had already conducted the property inventory search and had placed Plaintiff's property back in the cart to be moved to his new cell. My back is to the camera. I am wearing a black baseball cap and a black short sleeve uniform that has grey stripes on the left shoulder. I re-appear in the video footage at 11:56:34 to place additional

> personal property into the cart.  At 11:58:24, I, along with another officer can be seen taking the cart to Plaintiff's new cell location, located down the hallway and around the corner.  Sergeant Carr and I can be seen in the video at 12:01:52, returning to the property room strip cage where Plaintiff was still being held.  I appear again at 12:02:19 to retrieve a pair of blue latex gloves and then stop at the water fountain before returning to the strip cage.  I can be seen at 12:06:21, taking off blue latex gloves and throwing them away.  At 12:06:55, I can be seen exiting from the strip cage holding a yellow envelope, which contained the contraband weapon recovered from Plaintiff's personal property, to be further processed and stored as evidence.  None of the three inmates who subsequently appear in the remaining video footage being escorted by officers are the Plaintiff.  Plaintiff does not appear in the video footage at any time.  He was still in the strip search cage.

(ECF No. 32-1 at 2, ¶4).

**D.      Mobley's Opposition Response**

Mobley's opposition response was erroneously docketed as correspondence.  (ECF No. 33).  The sworn pleading raises several matters which Mobley contends prohibits the granting of summary judgment in favor of the defendants.  First, Mobley asserts that he did not decline medical attention following the use of force and notes that the "Sick Call Manual" requires an inmate to sign a Release of Responsibility ("ROR") any time an inmate does not appear for a clinic appointment.  (*Id*. at 1).  The ROR is supposed to be signed by the inmate and when the inmate refuses to sign, medical or dental staff must document that refusal.  (*Id*.)  Mobley asserts that he never refused treatment for pepper spray exposure and his signature was forged on the ROR.  (*Id*. at 3).  However, the ROR does not have Mobley's signature on it; rather, his name appears on the line designated for the "printed name" of the inmate and nothing appears on the "signature line."  (ECF No. 34-2 at 3).  There are two witness signatures on the form, as required when an inmate refuses to sign the ROR.  (*Id*.)

Mobley views Mallow's statements as inconsistent.  He states that Mallow's initial statement was that he photographed the weapon, then notified Carr, but in the Use of Force

Report Mallow said that he "secured the weapon on his person." (ECF No. 33 at 2). He adds that the photos of him and of the weapon are three minutes apart, "which shows that Ofc. Mallow pepper sprayed me before the weapon appeared, then he planted the weapon, photographed it, and 3 minutes later Ofc. J. Durst took photos of me." (*Id*.) The photographs of the weapon were taken by Mallow at 12:17 p.m. on September 15, 2018. (ECF No. 15-2 at 20–21). The photographs of Mobley's face and hands were taken by Officer Durst at 12:20 p.m. and 12:27 p.m., respectively. (*Id*. at 16–18). The time of the incident is reported in the Notice of Inmate Rule Violation as 11:55 a.m. (*id*. at 10) and is reported as 12:05 p.m. in the Use of Force Incident Report (*id*. at 8). Therefore, Mallow's statement in the Notice of Inmate Rule Violation, (*id*. at 10), that he photographed the weapon prior to completing the inventory (and thus prior to the pepper spray incident) appears incorrect, or at least those photographs were not the photographs provided at ECF 15-2 at 20–21, since those photographs were taken at 12:17 p.m., after the pepper spray incident occurred.

**E.      Mobley's Motion to Compel Discovery**

Mobley moves pursuant to Fed. R. Civ. Proc. 37(a) to compel defendants to answer interrogatories and to comply with requests for production of documents. (ECF No. 34.) To be entitled to relief under Rule 37(a) discovery must have already commenced and there must be evidence that the non-moving party has failed to comply with a proper discovery request. Here, discovery has not commenced. Discovery may not commence before defendants have answered or otherwise responded to the complaint, and then only after a scheduling order has been issued by this court. *See* Local Rule 104.4 (D. Md. 2018).[2] The court will not grant a motion to compel discovery at this time.

---

[2] "[D]iscovery shall not commence and disclosures need not be made until a scheduling order is entered."

**Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

**Analysis**

A.   **Use of Pepper Spray**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173

(1976)). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams*, 77 F.3d at 761. On the subjective element, an inmate must show that the guards used force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In assessing this element, a court should consider "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat . . . ;" and "(4) 'any efforts made to temper the severity of a forceful response.'" *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id*. at 37 (quoting *Hudson*, 503 U.S. at 9). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. *Id*. at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. The extent to which injuries are modest is accounted for in the award of damages. *See Wilkins*, 559 U.S. at 40. With respect to the use of pepper spray, this court has observed as follows:

> In the context of the use of pepper spray by prison staff, "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted). The use of pepper spray is not "per se a cruel and unusual punishment." *McCargo v. Mister*, 462 F. Supp. 813, 818 (D. Md. 1978). It may be used in order to control recalcitrant inmates. *Williams*, 77 F.3d at 763. Analysis regarding the amount of chemical agent used focuses, as with all other excessive force claims, on whether the Defendant acted with a sufficiently culpable state of mind. *Iko*, 535 F.3d at 238 (4th Cir. 2008) (citations omitted) (holding correctional officer not entitled to qualified immunity where additional chemical agent was deployed into inmate's cell after inmate attempted to comply with officer's order, did not react violently, and officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).
>
> Eighth Amendment violations have been found where an officer used more than a reasonable amount of a chemical agent. *See, e.g.*, *Furnace v. Sullivan*, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier). However, where an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable. *See Williams*, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed. App'x 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick*, 918 F. Supp. 977, 984 (N.D. W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown). Use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution. *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

*Kitchen v. Ickes*, 116 F. Supp. 3d 613, 626–27 (D. Md. 2015), *aff'd*, 644 Fed. App'x 243 (4th Cir. 2016).

For the reasons explained in the court's November 21, 2019, memorandum, summary judgment remains inappropriate. (*See* ECF No. 23 at 11–14). The court views the facts in the light most favorable to Mobley. Here, Mobley denies that he spit at or attempted to spit at Mallow or Carr, and asserts that Mallow sprayed him with pepper spray multiple times.[3] This could indicate that Mallow used more than a reasonable amount of pepper spray. While Mobley admits that he refused orders to turn around and be handcuffed, Mallow did not appear to base his use of pepper spray on that, and the defendants have not stated whether that would be a sufficient reason to use pepper spray. Further, Mallow's alleged use of a racial epithet at Mobley and the alleged statement that he would plant a knife on Mobley indicate that the pepper spray could have been deployed for the purpose of causing harm. In sum, there are genuine disputes of material fact as to whether Mobley spit at Mallow or Carr; the amount of pepper spray used; and Mallow's motivation in using the pepper spray.

Importantly, both of the defendants' dispositive motions (ECF No. 15 and ECF No. 32) appear to view the facts in the light most favorable to Mallow and Carr, not Mobley. For example, the defendants' renewed motion assumes as true that Mallow applied one burst of pepper spray and that Mobley attempted to spit at Mallow and Carr. (*See e.g.* ECF No. 32 at 8 ("In accordance with institutional use of force procedures, Defendant Mallow applied a short burst of pepper spray against Plaintiff once he escalated the situation by disobeying direct orders to stop spitting and turn around to be handcuffed. The application of pepper spray here was a legitimate purpose in order to restore order and prevent further attempts of assault.")). Therefore, the court cannot properly evaluate the argument that the defendants are entitled to summary judgment when viewing the facts in the light most favorable to Mobley.

---

[3] The record evidence does contradict Mobley's assertions that the pepper spray caused his loss of hearing and ear pain, which appears to have been caused by tissues stuffed into his ears.

The defendants also argue that the court need not credit Mobley's version of events because it "is so utterly discredited by the record that no reasonable jury could have believed him." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In the first motion (ECF No. 15),[4] the defendants argue that Mobley's version of events cannot be credited because it is contradicted by Mallow's and Carr's sworn testimony, the hearing officer for Mobley's rule violations charges believed the officers' accounts over Mobley's, the use of force investigation demonstrated that the use of pepper spray was warranted, Mobley's allegation that Mallow inexplicably pepper sprayed him and threatened to plant evidence on him is "implausible," Mobley refused medical treatment and was offered the chance to provide a written statement about the incident on the day it occurred but did not, and medical exams in response to Mobley's complaints of ear pain revealed he had tissue paper stuffed in his ears. (ECF No. 15-1 at 8–10).[5] That Carr and Mallow provided sworn statements conflicting with Mobley's allegations does not utterly discredit Mobley's testimony so that no jury could believe it, nor does the fact that the hearing officer and the use of force investigation credited Mallow's and Carr's version of events. Further, the court does not find Mobley's testimony so "implausible" that it should not be credited, nor will it decline to credit his statements because he refused medical care or did not provide a written statement on the day of the incident. Finally, while the court agrees that the medical evidence rebuts Mobley's assertion that the pepper spray caused his ear injury, the court cannot find that this fact discredits the rest of his testimony. While the above arguments are relevant to Mobley's credibility, they do not render Mobley's testimony so discredited that no reasonable jury could

---

[4] The defendants do not appear to make any arguments regarding crediting Mobley's testimony in the renewed motion.

[5] The defendants also argue that Mobley's testimony should not be credited because "he alleged Defendant Mallow said he was going to state that Plaintiff tried to spit on him when Plaintiff testified at the rule violation hearing that Defendant Mallow said he was going to state Plaintiff tried to spit on Defendant Carr." (ECF No. 15-1 at 9). This may go to Mobley's credibility, but it does not render Mobley's testimony so utterly discredited that no jury could believe him.

believe him, and the court cannot make credibility determinations on a motion for summary judgment.  *See Jacobs*, 780 F.3d at 569 (at summary judgment, "[t]he court . . . cannot weigh the evidence or make credibility determinations").

**B.     Decontamination Shower**

Mobley alleges that he was denied a decontamination shower by Carr.  (ECF No. 29 at 1).  Mallow stated in his use of force incident report that Mobley was offered a decontamination shower and refused.  (ECF No. 15-2 at 8–9).  There appears to be nothing in the medical records or other records provided regarding a decontamination shower.  This is a factual dispute inappropriate for resolution on a motion for summary judgment.

Another court in this district has stated that prior cases "clearly establish that the Eighth Amendment may be violated if, following exposure to pepper spray, a prison inmate is not provided with the opportunity to shower or wash off the offending substance, at least when it is safe to do so."  *Wagner v. Warden*, No. CV ELH-14-791, 2016 WL 7178297, at *12 (D. Md. Dec. 8, 2016).  Mobley's allegation that he was denied a decontamination shower is somewhat conclusory, as he does not specify when and where he asked for one.  But the defendants do not appear to respond in their motions except to point to Mallow's statement in the use of force report that Mobley was offered a shower and refused.  (ECF No. 15-1 at 3 (citing to Use of Force Incident Report, ECF No. 15-2 at 8–9)).  Therefore, there remains a genuine dispute of material fact as to whether Mobley was denied a decontamination shower.

## C.     False Report/Planting of Evidence

The Fourth Circuit has noted that, while generally "a false disciplinary charge cannot serve as the basis for a constitutional claim," "there are exceptions to this rule." *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). For example, "a disciplinary charge may be actionable under § 1983 if retaliatory" (describing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)) and "unprincipled manipulation of legitimate prison regulations, to the detriment of a prisoner, can constitute unconstitutionally arbitrary punishment" (describing *Surprenant v. Rivas*, 424 F.3d 5, 13–14 (1st Cir. 2005)). *Cole*, 631 F. App'x at 186.

The defendants argue that "[a]side from Plaintiff's bare accusations, which are also contradicted by his earlier ARP complaint, his conclusory allegations of being 'framed' and retaliated against are wholly unsupported by any other means of verification, and therefore do not create a genuine issue of material fact even in the light most favorable." (ECF No. 32 at 9). First, it is not clear what the defendants refer to when they allege that Mobley's accusations are contradicted by his ARP complaint. If this refers to the inconsistency in Mobley's recounting of what Mallow said to him, this is discussed in note 5, *supra*. Second, Mobley has provided sworn testimony that he did not have a weapon and Mallow told him he would plant a weapon on him. To the extent that the defendants argue that this sworn testimony is not enough to create a genuine dispute of material fact, especially when the defendants provide no conclusive evidence to the contrary that would utterly discredit Mobley's claim, the defendants have provided no support for that argument.

The court, however, agrees with the defendants that any allegation that Mallow retaliated against Mobley is conclusory. But because this case is going forward, and counsel will be

appointed for Mr. Mobley, counsel will have the opportunity to amend Mr. Mobley's complaint and, if possible, more fully explain his claim of retaliation, and in particular why he believes Mallow allegedly planted the weapon in Mobley's belongings.

## Conclusion

Defendants' motion (ECF No. 32), construed as one for summary judgment, will be denied, and counsel will be appointed to represent Mr. Mobley.  Plaintiff's motion for an order compelling discovery (ECF No. 34) will be denied without prejudice.  A separate order follows.

| | |
|---|---|
| 9/25/20 | /S/ |
| Date | Catherine C. Blake<br>United States District Judge |